No. 5202.

MISSISSIPPI VALLEY TRANSPORTATION COMPANY VS. GEORGE A.
FOSDICK & CO.

The common carrier has a lien upon the goods transported by him for freight, and for expenses necessarily incurred in preserving them, which continues fifteen days after their delivery to the consignee if the goods remain in his possession so long.

As between the creditor and debtor, a lien or privilege need not be recorded. It must be recorded to affect third persons.

The amount of a sequestration bond is at the discretion of the court that grants the writ, except when real estate yielding revenue is sequestered.

Where a party bonds property, sequestered as in his possession, he is estopped from afterwards setting up that it was not in his possession, or that it belonged to some third person. He will be liable on his bond for whatever sum the plaintiff recovers.

Where by the bill of lading the goods are received " at owners' risk of loss or damage," any damage to the goods must be proved to have been caused by the fault of the carrier before he can be held liable.

The owners of a tow-boat cannot be held liable for any damage to the cargo of the vessel in tow, caused by the unseaworthiness of the vessel.

APPEAL from the Sixth District Court of New Orleans. SAUCIER, J.

*Richardson* for Plaintiff. *Hudson & Fearn* for Defendant Appellant.

The " Mary Alice," a tow-boat of plaintiffs, took in tow a barge, the " Lucy Brooke " laden with walnut timber belonging to the American Timber and Manufacturing Company. The captain signed a bill of lading for the barge and cargo, consigned to Geo. A. Fosdick & Co. to be delivered at or near Carrollton on payment of $500 for towing " at owner's risk of loss or damage." The barge was in such bad condition when taken in tow that the captain of the tug expressed apprehensions that he would be unable to get the barge to New Orleans, and that was the reason he added the words " at owner's risk " to the bill of lading. The tug and barge reached Greenville near Carrollton, the place where it was understood, delivery was to be made, and was left in charge of an employee of the plaintiff. The barge was leaking badly and was sinking. This employee put hands to pumping, and informed the agent of the plaintiff of the alarming condition of the barge, who informed the defendants of it. The defendants did not send to see after her. When the plaintiff's agent found that the defendants had not taken charge of the barge

and cargo, he sent two tugs and had the barge brought down to the Calliope Street wharf, where she was moored safely under the stern of a ship, which protected her from the force of the current and from drift. The agent offered to deliver there, but the consignees refused to receive elsewhere than at Greenville. The tugs remained alongside and pumped all night, and kept the water down, and the next day towed her back to Greenville, and the next day .the barge and cargo were delivered. The suit is to recover $940 for freight and towage and expenses incurred in preserving the barge and cargo. The defendants reconvened for $1,989, as agents of the owners, for expenses for preservation, and loss for having to sell the cargo at New Orleans instead of New York as was intended. The barge was proven to be leaking before the tug took her in tow at Vicksburg and the pumps had to be kept working two-thirds of the time to keep her afloat.

MARR, J. The plaintiff claims a lien and privilege for freight and towage, and for expenses incurred in the preservation of the barge and cargo of lumber, both of which were sequestered in the possession of Fosdick & Co., consignees, who bonded them. The consignees moved to dissolve the sequestration on the grounds that the plaintiff has not a lien and privilege because the property was delivered without reservation of any lien, and had not recorded any privilege, and the bond for $500 was insufficient for perishable property worth $3,000.

The carrier has a privilege for freight during fifteen days after delivery, if the merchandize has not passed into third hands. Civ. Code, 3240 (3213). The carrier exercised his right within fifteen days. The consignees are not third persons within the meaning of the law. They are the persons to whom the delivery is to be made. The whole object of recording is to protect third persons. When the law declares that no privilege shall affect third persons unless recorded, it recognizes the privilege as existing between the parties. The only restriction upon the judge on fixing the bond for a sequestration is his discretion, except in real property which yields a revenue. C. P. Arts. 276-7. By bonding, Fosdick & Co. admitted that the property was found in their possession, and cannot be heard to say it was not sequestrated while there. The sequestration must be reinstated.

There is a wide difference between the duties and obligations of the common carrier in general, who furnishes the vessel on which the goods to be transported are laden, and the carrier who merely tows vessels belonging to others, who employ him for that purpose.   In the one case, the carrier is bound to furnish a vessel in all respects suitable and snfficient for the voyage, and for the safe-keeping and transportation of the goods ; and the carrier is responsible for any loss or damage that may occur by reason of the insufficiency or unfitness of his vessel for the voyage, or for the service.   In the other case, the carrier is bound to furnish a vessel of sufficient motive power, properly manned and equipped, and suitable for the voyage and the service ; and he is not responsible for loss or damages occurring by reason of the insufficiency of the vessel towed to carry safety the cargo or its unfitness for the voyage.

The words used in the bill of lading, " at owner's risk of loss or damage," must operate as a limitation of the ordinary liability of the carrier, and it would require positive proof that the loss occurred solely by reason of fault on his part to make the proprietor of a tow-boat liable under such a contract.

There is another and an obvious distinction between the liability of the carrier to take care of goods, laden on his vessel, to be delivered at the terminus of the voyage, until they are delivered to the consignee, and the liability of the proprietor of a tow-boat, having several vessels in charge, one of which is to be delivered at an intermediate place, and the others at the terminus of the voyage.   No reasonable man could expect the tow-boat under such circumstances to stop and wait at the intermediate place, until it would suit the convenience of the owner or the consignee to present himself and to receive and take charge of the towed vessel.

The " Lucy Brooke " was not a *model* barge, nor was it in any sense a *seaworthy* barge.   It was a flat-boat, of that description well known as " coal flats," and no underwriter would have paid a loss on the cargo of such a boat under such a policy.

Defendants offered proof to show that this cargo was sold to L. W. Miller, on the 26th April, at one o'clock.   The alleged deviation was on the 22nd of April, and the cancellation of the insurance did not take effect until four days after, and nearly twelve hours after the

assured profess to have divested themselves of the ownership of the property.

By the terms of the policy the risk terminated on the arrival at the place of destination, a reasonable time thereafter being allowed for the discharge of the cargo. We do not think it necessary to inquire what effect the alleged deviation might have had on the contract of insurance, because we do not see what injury the assured have suffered from the cancellation of that contract, nor how it can form the basis of a claim in Reconvention against the plaintiff.

All the loss and damage which the owners of the '' Lucy Brooke '' and cargo sustained is attributable directly to the use of a boat wholly unfit for the transportation of the cargo ; to their failure to take prompt measures to receive and take care of the property on arrival at Greenville, and to their tardiness after receiving written notice of the peril to which barge and cargo were exposed : and they have no right to look to the plaintiff for reparation. We do not understand how the consignees, after receiving the cargo, expect to escape liability for freight and the expenses incurred for the preservation of the property.

The judgment was for the plaintiff.

*Judgment affirmed.*